**ORAL ARGUMENT SCHEDULED FOR APRIL 19, 2016**

No. 15-1127 and 15-1205 (Consolidated)

IN THE

# United States Court of Appeals for the District of Columbia Circuit

EARTHREPORTS, INC., *et al.*,

*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent.*

On Petition for Review of Orders of the
Federal Energy Regulatory Commission

**BRIEF FOR RESPONDENT-INTERVENOR
AMERICAN PETROLEUM INSTITUTE**

STACY LINDEN
BEN NORRIS
AMERICAN PETROLEUM INSTITUTE
1220 L Street, N.W.
Washington, D.C. 20005
(202) 682-8000
LindenS@api.org
NorrisB@api.org

JOHN LONGSTRETH
DAVID L. WOCHNER
K&L GATES LLP
1601 K Street, N.W.
Washington, D.C. 20006
(202) 778-9000
John.Longstreth@klgates.com
David.Wochner@klgates.com

*Counsel for American Petroleum Institute*

FINAL BRIEF: February 26, 2016

# CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**A.  PARTIES**

1. The parties to the proceeding are listed in Petitioners' opening brief.

2. Pursuant to Federal Rule of Appellate Procedure 26.1 and D.C. Circuit Rule 26.1, the American Petroleum Institute (API) states that it is a not-for- profit trade association based in Washington, D.C. charged with promoting the interests of its over 650 members in the United States and around the world.  API is not a publicly held corporation, has no parent companies, and no companies have a ten percent or greater ownership interest in API.

**B.  RULINGS UNDER REVIEW**

References to the rulings at issue appear in the previously submitted briefs of Petitioner and Respondent.

**C.  RELATED CASES**

Respondent FERC's brief lists the related cases.

|  |  |
|---|---|
| | */s/     John Longstreth* |
| STACY LINDEN | JOHN LONGSTRETH |
| BEN NORRIS | DAVID L. WOCHNER |
| AMERICAN PETROLEUM INSTITUTE | K&L GATES LLP |
| 1220 L Street, N.W. | 1601 K Street, N.W. |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| (202) 682-8000 | (202) 778-9000 |
| LindenS@api.org | John.Longstreth@klgates.com |
| NorrisB@api.org | David.Wochner@klgates.com |
| | *Counsel for American Petroleum Institute* |

February 26, 2016

i

**TABLE OF CONTENTS**

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ................... i

TABLE OF AUTHORITIES ............................................................................................ iii

GLOSSARY ...................................................................................................................... iv

JURISDICTIONAL STATEMENT ................................................................................. 1

INTRODUCTION ............................................................................................................. 1

ISSUES PRESENTED FOR REVIEW ........................................................................... 3

STATUTES AND REGULATIONS ............................................................................... 3

STATEMENT OF FACTS ............................................................................................... 3

STANDARD OF REVIEW .............................................................................................. 5

SUMMARY OF ARGUMENT ........................................................................................ 6

ARGUMENT ..................................................................................................................... 7

   I.   NEPA Does Not Require FERC To Engage in Unfounded Speculation About The Location And Quantity Of Incremental Upstream Production. ....................................................................................................... 7

      A.  The development of LNG export projects is the result of substantial increases in domestic natural gas production, not its cause. ................ 7

      B.  The Environmental Petitioners' position lacks any legal support. ................ 9

   II.  There Is No Gap in Regulation If FERC Does Not Consider the Environmental Impacts of Induced Production. ................................................ 11

   III.  The Environmental Petitioners' Position Makes Sense Only In The Context Of An Effort To Limit Or Eliminate Natural Gas Production And Not In The Context Of Improving The Environmental Review Of The Cove Point Project. ................................................................................. 11

CONCLUSION ............................................................................................................... 13

CERTIFICATE OF COMPLIANCE ............................................................................ 14

CERTIFICATE OF SERVICE ..................................................................................... 15

# TABLE OF AUTHORITIES

**CASES:**

*Coal. For Responsible Growth and Res. Conservation v. FERC*, 485 Fed. Appx. 472 (2nd Cir. 2012) …………………………………….....................................................10

*Dep't of Transp. v. Public Citizen,* 541 U.S. 752 (2004) ...…………………………9

*Myersville Citizens for a Rural Community, Inc. v. FERC*, 783 F.3d 1301 (D.C. Cir. 2015)…………………………………………………………………………………...5

*Wash. Gas Light Co. v. FERC*, 532 F.3d 928 (D.C. Cir. 2008)………………………..5

**STATUTES:**

15 U.S.C. § 717(b) ………………………………………………………………...10

42 U.S.C. § 4332(C) …………………………………………………………..........7

**REGULATIONS:**

40 C.F.R. § 1508.8(b) …………………………………………………….................7

**OTHER:**

Sierra Club website, http://www.sierraclub.org/beyond-fossil-fuels ...........................2

The Williams Cos., Inc., Transco, http://co.williams.com/operations/atlanticgulf-operations/transco/ …………………………………………………….…........4

U.S. Dep't of Energy, Long Term Applications Received by DOE/FE to Export Domestically Produced LNG from the Lower-48 States, http://energy.gov/sites/prod/files/2015/12/f27/Summary%20of%20LNG%20Export%20Applications.pdf ………………………………………………………………….7

U.S. Energy Information Admin., U.S. Natural Gas Gross Withdrawals, http://www.eia.gov/dnav/ng/hist/n9010us2A.htm .......................................................3

U.S. Energy Information Admin., U.S. Shale Production, http://www.eia.gov/dnav/ng/hist/res_epg0_r5302_nus_bcfa.htm .................................3

*Authorities upon which we chiefly rely are marked with asterisks.

# GLOSSARY

| | |
|---|---|
| API | Respondent-Intervenor the American Petroleum Institute |
| Authorizing Order | Order Granting Section 3 and Section 7 Authorizations, *Dominion Cove Point LNG, LP,* 148 FERC ¶ 61,244 (2014) |
| DOE | United States Department of Energy |
| Dominion Cove Point | Dominion Cove Point LNG, LP |
| Dom'n Cove Pt. App'n | Dominion Cove Point LNG, LP, Application for Authority to Construct, Modify, and Operate Facilities Used for the Export of Natural Gas under Section 3 of the Natural Gas Act and Abbreviated Application for a Certificate of Public Convenience and Necessity under Section 7 of the Natural Gas Act (Apr. 1, 2013) |
| EA | FERC, Environmental Assessment for the Cove Point Liquefaction Project, Docket No. CP 13-113-000 (May 2014) |
| Environmental Petitioners | EarthReports, Inc., Sierra Club, and Chesapeake Climate Action Network |
| Envt'l Pet. Br. | Brief of Environmental Petitioners EarthReports, Inc., *et al.* |
| FERC or the Commission | Federal Energy Regulatory Commission |
| FERC Br. | Brief of Respondent FERC |
| JA | Joint Appendix |
| LNG | Liquefied natural gas |
| NEPA | National Environmental Policy Act |
| Rehearing Order | Order Denying Rehearing and Stay, *Dominion Cove Point LNG, LP,* 151 FERC ¶ 61,095 (2015) |

iv

# JURISDICTIONAL STATEMENT

Respondent-Intervenor the American Petroleum Institute ("API") adopts the jurisdictional statement in Respondent-Intervenor Dominion Cove Point's brief as to Environmental Petitioners' claims in Docket No. 15-1127.

This Court lacks jurisdiction over the natural gas export application still pending before the Department of Energy (DOE). Petitioners have advanced substantively identical arguments in DOE Docket No. 11-128-LNG, in which DOE has authorized Dominion Cove Point to export natural gas as LNG to "non free trade" nations. Petitioner Sierra Club has a pending request for rehearing of DOE's authorization order, and cannot seek review in this case of matters pending before DOE. *See* Envt'l Petitioners' Br. at 10-12, 18, 36 (addressing the DOE application).

# INTRODUCTION

Although the Environmental Petitioners frame their petition as a challenge to the adequacy of the Federal Energy Regulatory Commission's (FERC's) environmental review of the Cove Point LNG export project, their true goal is to slow or eliminate development of all forms of fossil fuels and related infrastructure. Petitioner Sierra Club has branded this tri-partite campaign

1

"Beyond Natural Gas," "Beyond Coal" and "Beyond Oil."[1] And in unsuccessfully attempting to stay FERC's orders, Petitioner CCAN's founder and director confirmed the organization's strategy to "push for a societal switch away from dirty fossil-fuel energy and toward clean Energy." Stay Mot. Exh. 1 ¶ 4.

The environmental review of a single LNG project is not the proper vehicle to debate or decide whether there should be a broad "societal switch" from fossil fuels. The Environmental Petitioners attempt to make it so by wrongly suggesting that the proposed construction of the Cove Point export facility (and others) is the *cause* of dramatic increases in domestic natural gas production, rather than the *result* of them. These Petitioners would have FERC engage in a fruitless effort to speculate how much incremental natural gas production from wells in the lower 48 states would be stimulated by incremental overall demand created by access to overseas markets via the Cove Point project, *and then* try to assess the alleged environmental impacts of this speculative incremental production increase. Petitioners need not be concerned whether this guesswork would lead to a meaningful or useful analysis, as their goal is to stop the activity altogether, not to mitigate its environmental impacts.

FERC properly recognized, however, that these upstream effects were too uncertain and indefinite to inform its analysis meaningfully, and properly limited

---

[1] *See* Sierra Club website, http://www.sierraclub.org/beyond-fossil-fuels (last visited Jan. 8, 2016).

2

the analysis to the reasonably foreseeable consequences of the project. Because FERC's review fully complied with the National Environmental Policy Act (NEPA), Environmental Petitioners' petition for review in Docket No. 15-1127 should be denied.

API expresses no opinion on the issues raised in Docket No. 15-1205.

## ISSUES PRESENTED FOR REVIEW

API's brief addresses the first issue stated on page 2 of the Commission's brief.

## STATUTES AND REGULATIONS

Relevant statutes and regulations are contained in the briefs of FERC and Dominion Cove Point.

## STATEMENT OF FACTS

API adopts the facts stated in FERC's brief as to Docket No. 15-1127, *see* FERC Br. at 5-7, 9-19, 20-25, and adds the following facts relevant to API's participation.

API's members comprise the very oil and natural gas industry that the Petitioners seek to eliminate. In its nearly 100-year history API has encouraged the safe and responsible development of oil and natural gas resources by, among other things, developing, publishing and revising more than 600 consensus-based industry standards to guide development of America's natural gas resources in an

3

environmentally responsible manner.  Responsible federal and state regulators have cited nearly two hundred of these API standards to ensure that the nation produces its oil and natural gas resources and operates its energy infrastructure as safely and efficiently as possible.

According to the U.S. Energy Information Administration, U.S. natural gas production increased from 24.7 trillion cubic feet in 2007 to 31.3 trillion cubic feet in 2014, an increase of nearly 27 percent in only seven years.[2]  Production from shale gas formations rose from 1.3 trillion cubic feet in 2007 to 5.3 trillion cubic feet in 2010, and then to 13.4 trillion cubic feet in 2014.[3]  This significant expansion of natural gas production has led to a number of proposals to export natural gas overseas as LNG.  In September 2011, Dominion filed an application with DOE for authorization to export LNG, well after this substantial increase in production was underway.

Using interconnections to major interstate pipelines operated by Transcontinental Pipeline Co. (Transco), Columbia Gas Transmission, and DTI, Dominion Cove Point's existing and future customers will be able to source their gas from "anywhere in the gas market" via the existing Cove Point Pipeline.  EA

---

[2] U.S. ENERGY INFORMATION ADMIN., U.S. Natural Gas Gross Withdrawals, http://www.eia.gov/dnav/ng/hist/n9010us2A.htm (last visited Jan. 10, 2016).
[3] U.S. ENERGY INFORMATION ADMIN., U.S. Shale Production, http://www.eia.gov/dnav/ng/hist/res_epg0_r5302_nus_bcfa.htm (last visited Jan. 10, 2016).

4

at 24, JA at 300.  The Transco pipeline system is one of the largest natural gas transmission systems in the United States, transporting a maximum of 10.9 billion cubic feet of natural gas produced in the Gulf Coast, Mid-Continent, and Appalachian regions per day across approximately 10,200 miles of pipeline.[4]  As noted in FERC's Environmental Assessment for the project, these interconnections will "allow feed gas for the [p]roject to be sourced from a wide variety of regions in the U.S. depending on market forces and circumstances at any given time."  EA at 18, JA at 294.

## STANDARD OF REVIEW

FERC decisions under the Natural Gas Act must be upheld unless they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"; the Court "does not substitute its judgment for that of the Commission."  *Myersville Citizens for a Rural Community, Inc. v. FERC*, 783 F.3d 1301, 1308 (D.C. Cir. 2015) (internal citations omitted).  FERC's judgments as to the technical or scientific issues in a NEPA review are entitled to "extreme deference."  *Wash. Gas Light Co. v. FERC*, 532 F.3d 928, 930 (D.C. Cir. 2008).

---

[4] THE WILLIAMS COS., INC., Transco, http://co.williams.com/operations/atlanticgulf-operations/transco/ (last visited Jan. 10, 2016).

## SUMMARY OF ARGUMENT

FERC correctly concluded that NEPA does not require the Commission to evaluate the possible environmental impacts of any incremental natural gas production that might occur some day in some unknown location and provide fuel for liquefaction and export via the Cove Point project. NEPA requires that a federal agency consider the direct and indirect effects of its actions, but it is uncertain and indefinite as to what upstream activities, if any, will be induced by the export facility. It would make little sense for Dominion, or any other company building an LNG export facility, to invest billions of dollars in the hope that the facility will be supplied by induced production. Rather, those investments have been made because substantial production increases *already* have occurred, thus making natural gas available for export. Even if the option to export induced some incremental production, FERC correctly concluded that any assessment as to the actual location and quantity of that incremental production would be highly speculative and could not contribute meaningfully to its analysis.

The Environmental Petitioners also ignore that federal and state agencies other than FERC are responsible for regulating the exploration for and production of natural gas in the United States. These agencies have overseen the existing production increase and would regulate any incremental increase that might be stimulated by the Cove Point project or any other LNG export project. FERC, by

contrast, has no authority to regulate natural gas production. Inserting the Commission into this area simply because it permits facilities that might receive some incremental natural gas molecules produced somewhere in the United States turns the clear directives of Congress upside down.

## ARGUMENT

### I. NEPA Does Not Require FERC To Engage in Unfounded Speculation About The Location And Quantity Of Incremental Upstream Production.

#### A. The development of LNG export projects is the result of substantial increases in domestic natural gas production, not its cause.

NEPA requires that a federal agency evaluate the potential environmental effects of its decision before taking a federal action. 42 U.S.C. § 4332(C). Implementing regulations require evaluation of "indirect effects" that are "*caused by* the action and are later in time or further removed in distance, but are *still reasonably foreseeable*." 40 C.F.R. § 1508.8(b)(emphasis added).

The Environmental Petitioners incorrectly assert that FERC's environmental review of the Cove Point project should have considered, as "indirect effects" of the project, incremental upstream gas production activities "induced" by Cove Point. Envt'l Pet. Br. at 33. This contention reverses the actual link of causation, however. Dominion Cove Point and other developers are building export facilities to take advantage of substantial increases in production that have been underway for nearly a decade. As noted above, domestic natural gas production has

7

increased over 25% since 2007, and shale gas production more than quadrupled between 2007 and 2010, and then more than doubled again by 2014.

LNG project developers began moving toward an LNG export scenario starting in 2010, some three years after the shale boom began. Two export applications were filed with DOE in 2010, and five more, including Dominion Cove Point's, were filed in 2011.[5] Dominion Cove Point's application expressly confirms that "plentiful, inexpensive supplies of domestic gas" discouraged LNG imports and caused Dominion Cove Point, as well as other infrastructure developers, "to consider plans to offer services for the export of domestic natural gas." Dom'n Cove Pt. App'n, at 8, JA at 101.

Changes in the natural gas industry reinforce the illogic of Environmental Petitioners' position. No project developer or lender would risk investing billions of dollars to construct LNG liquefaction and export facilities without reasonable certainty that the necessary feed gas was available. LNG export projects are the *result* of increased production, not their cause.

---

[5] Sabine Pass Liquefaction, LLC, filed the first LNG export application with DOE for exports from the Lower 48 States on August 11, 2010. DOE/FE Docket No. 10-85-LNG. A full summary of the long-term LNG export applications for the Lower 48 States is available from DOE's website at http://energy.gov/sites/prod/files/2015/12/f27/Summary%20of%20LNG%20Export%20Applications.pdf (last visited Jan. 10, 2016).

## B. The Environmental Petitioners' position lacks any legal support.

There is no legal support for Environmental Petitioners' contention that FERC was required to examine supposed environmental impacts from speculative and indefinite upstream production activities. Even if there were some incremental production stimulated by exports, that activity is not "caused by" the Dominion Cove Point project for NEPA purposes. According to the U.S. Supreme Court, NEPA's "indirect effects" analysis is analogous to the familiar doctrine of proximate causation, requiring the agency to "draw a manageable line between those causal changes that may make an actor responsible for an effect and those that do not" and requiring a reviewing court to defer to this line-drawing under the arbitrary and capricious standard of review. *See Department of Transportation v. Public Citizen,* 541 U.S. 752, 767 (2004) (quoting *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460 U.S. 766, 774 n.7 (1983)). A "but for" causal relationship is insufficient to establish an indirect effect; rather there must be a "reasonably close causal relationship between the environmental effect and the alleged cause." *Id.*

FERC reasonably applied this standard in approving the Cove Point project. Recognizing that particular sources of feed gas for the project are neither "reasonably foreseeable [nor] quantifiable," FERC concluded that NEPA does not require additional analysis of these upstream activities. Authorizing Order at 74,

9

JA at 689. FERC further noted that gas production from the Marcellus Shale region is not essential for the project because the pipeline serving it could access gas supplies from the entire interstate pipeline grid through its multiple interconnections and that development of the nation's shale reserves "will likely continue regardless of whether the [project] is approved." Authorizing Order at 73, JA at 688. FERC's reasoning that such upstream activities are not sufficiently causally related to this LNG infrastructure project to warrant, or even permit, a meaningful analysis under NEPA has been ratified by the Second Circuit. *Coal. For Responsible Growth and Res. Conservation v. FERC*, 485 Fed. Appx. 472, 474 (2nd Cir. 2012).

FERC's legal analysis of the causation issue confirms the experience of industry outlined above: a substantial increase in U.S. natural gas production predated and led to the LNG export trend and likely will continue whether or not particular LNG export projects, such as Cove Point, go forward. FERC's conclusions that any incremental increases in production would not be closely enough linked to the project to require their analysis, and that particular incremental sources could not be identified to allow for meaningful analysis, are reasonable and warrant deference.

10

## II. There Is No Gap in Regulation If FERC Does Not Consider the Environmental Impacts of Induced Production.

The Natural Gas Act explicitly excludes the production of natural gas from FERC's jurisdiction. 15 U.S.C. § 717(b). FERC's recognition of this limitation leaves no gap in regulation. State and federal agencies other than FERC have regulated natural gas production for decades, including by referencing technical standards that API has developed based on years of experience in natural gas operations.[6] Suggesting that there is a gap in regulation also ignores that state authorities are better positioned to address localized issues of natural gas production, having regulated these activities for decades. The insinuation that natural gas production is an unregulated Wild West lacks foundation.

## III. The Environmental Petitioners' Position Makes Sense Only In The Context Of An Effort To Limit Or Eliminate Natural Gas Production And Not In The Context Of Improving The Environmental Review Of The Cove Point Project.

As set out above, at 1-2 & n.1, the Environmental Petitioners have made clear their goal to limit or eliminate domestic natural gas production and related infrastructure. Hamstringing the development of LNG projects already found to be in the public interest by forcing FERC to engage in impossible, fruitless, or

---

[6] SEE CONG. RESEARCH SERV., AN OVERVIEW OF UNCONVENTIONAL OIL AND NATURAL GAS: RESOURCES AND FEDERAL ACTIONS at 10 (Apr. 22, 2015) ("States are the principal regulators of oil and gas production activities on state and private lands …The federal government … has responsibility for overseeing oil and gas development on federally managed lands").

11

duplicative environmental review would further that goal. It would not, however, further NEPA's goal that FERC consider the effects of the particular activities whose causal connection to the project is close enough that the activities can be identified with sufficient concreteness and specificity to permit useful analysis. By urging that speculative and indefinite purported effects also must be analyzed, the Environmental Petitioners seek to contort NEPA's focus on process into a broad assault on the use of fossil fuels. Such a result is inconsistent with NEPA, its implementing regulations, the case law interpreting them, and the very purpose of the statute requiring consideration of only the reasonably foreseeable environmental effects of a federal action.

## CONCLUSION

For the foregoing reasons, and those in the briefs submitted by FERC and Dominion Cove Point, this Court should deny the petition for review in Docket No. 15-1127.

Respectfully submitted,

/s/     John Longstreth

| | |
|---|---|
| STACY LINDEN | JOHN LONGSTRETH |
| BEN NORRIS | DAVID L. WOCHNER |
| AMERICAN PETROLEUM INSTITUTE | K&L GATES LLP |
| 1220 L Street, N.W. | 1601 K Street, N.W. |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| (202) 682-8000 | (202) 778-9000 |
| LindenS@api.org | John.Longstreth@klgates.com |
| NorrisB@api.org | David.Wochner@klgates.com |

*Counsel for American Petroleum Institute*

February 26, 2016

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C) and D.C. Circuit Rule 32(a), I hereby certify that the foregoing brief was produced using the Times New Roman 14-point typeface and contains 2,493 words.

|  |  |
|---|---|
|  | */s/ John Longstreth* |
| STACY LINDEN | JOHN LONGSTRETH |
| BEN NORRIS | DAVID L. WOCHNER |
| AMERICAN PETROLEUM INSTITUTE | K&L GATES LLP |
| 1220 L Street, N.W. | 1601 K Street, N.W. |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| (202) 682-8000 | (202) 778-9000 |
| LindenS@api.org | John.Longstreth@klgates.com |
| NorrisB@api.org | David.Wochner@klgates.com |
|  |  |
|  | *Counsel for American Petroleum Institute* |

February 26, 2016

## CERTIFICATE OF SERVICE

I certify that on February 26, 2016, the foregoing Brief for Respondent-Intervenor American Petroleum Institute was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

| | |
|---|---|
| | */s/   John Longstreth* |
| STACY LINDEN | JOHN LONGSTRETH |
| BEN NORRIS | DAVID L. WOCHNER |
| AMERICAN PETROLEUM INSTITUTE | K&L GATES LLP |
| 1220 L Street, N.W. | 1601 K Street, N.W. |
| Washington, D.C. 20005 | Washington, D.C. 20006 |
| (202) 682-8000 | (202) 778-9000 |
| LindenS@api.org | John.Longstreth@klgates.com |
| NorrisB@api.org | David.Wochner@klgates.com |

*Counsel for American Petroleum Institute*

February 26, 2016