**ORAL ARGUMENT SCHEDULED FOR APRIL 19, 2016**

————————————————————

No. 15-1205; consolidated with No. 15-1127

————————————————————

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

————————————————————

BP ENERGY COMPANY,

*Petitioner*,

v.

FEDERAL ENERGY REGULATORY COMMISSION,

*Respondent*,

————————————————————

On Petition for Review of the Order of the Federal Energy Regulatory
Commission

————————————————————

**FINAL REPLY BRIEF OF PETITIONER**

————————————————————

Betsy R. Carr
BP Energy Company
201 Helios Way
Houston, TX 77079
713.323.6353
Betsy.Carr@bp.com

Virginia Seitz
Erika L. Maley
John T. Hebden
Sidley Austin LLP
1501 K Street NW
Washington, DC 20005
202.736.8961
emaley@sidley.com
*Counsel for Petitioner BP Energy
Company*

February 26, 2016

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.................................................................. iv

GLOSSARY ................................................................................... vii

SUMMARY OF ARGUMENT .............................................................1

ARGUMENT ...................................................................................3

I.     BP Has Standing To Challenge FERC'S Order .........................................3

II.    FERC Erred In Holding That Dominion Did Not Unduly
Discriminate Against BP ...............................................................5

     A.    FERC's Holding That BP And Statoil Are Not Similarly Situated
Is Invalid ...........................................................................5

           1.    The NGA Prohibits Undue Discrimination Between
Customers Receiving Similar Terminal Services Under
Different Regulatory Regimes...............................................5

           2.    Statoil's Status As A "Foundation Shipper" Provides
No Basis For Upholding FERC's Order ...............................8

     B.    FERC Erred In Refusing To Analyze Whether Dominion's
Turnback Offer To Statoil Was A Sweetheart Deal........................

     C.    The Commission's Post-Hoc Rationalization That Turnback Is
Not A "Term Or Condition Of Service" Is Invalid......................12

           1.    FERC's Contention That Turnback Is Not A "Term Or
Condition Of Service" Is An Impermissible Post-Hoc
Rationalization.....................................................................12

           2.    Turnback Is A "Term Or Condition Of Service." ..............15

III.   FERC Erred In Holding That Dominion's Tariff Is Adequate To
Prevent Undue Discrimination.................................................19

CONCLUSION ................................................................................20

CERTIFICATE OF COMPLIANCE ....................................................................21

CERTIFICATE OF SERVICE ...............................................................................22

# TABLE OF AUTHORITIES

**Page**

C<span>ASES</span>

*Abbott Labs. v. Young*,
    920 F.2d 984 (D.C. Cir. 1990)..............................................................7

*Anderson v. FERC*,
    333 F. App'x 575 (D.C. Cir. 2009) ...............................................4, 5

*Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*,
    467 U.S. 837 (1984)..............................................................................5

*Comcast Corp. v. FCC*,
    526 F.3d 763 (D.C. Cir. 2008)..................................................15, 17

*Council for Urological Interests v. Burwell*,
    790 F.3d 212 (D.C. Cir. 2015)...........................................8, 10, 13, 14

*Duncan v. Walker*,
    533 U.S. 167 (2001)..............................................................................7

*Inv. Co. Inst. v. Camp*,
    401 U.S. 617 (1971)...........................................................................14

*Jacksonville Bulk Terminals Inc. v. Int'l Longshoreman's Ass'n*,
    457 U.S. 702 (1982)...........................................................................16

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983).............................................................................12

*Ne. Energy Assocs. v. FERC*,
    158 F.3d 150 (D.C. Cir. 1998).............................................................3

*NRG Power Mktg., LLC v. FERC*,
    718 F.3d 947 (D.C. Cir. 2013)..........................................................10

*Denotes authorities most relied upon.

*PNGTS Shippers Grp. v. FERC*,
    592 F.3d 132 (D.C. Cir. 2010)................................................................4

*Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*,
    87 F.3d 1356 (D.C. Cir. 1996)..............................................................3

*\*SEC v. Chenery Corp.*,
    332 U.S. 194 (1947)........................................................................8, 9

*\*Town of Norwood v FERC*,
    587 F.2d 1306 (D.C. Cir. 1978)............................................................10

*United Distrib. Cos. v. FERC*,
    88 F.3d 1105 (D.C. Cir. 1996)..............................................................19

*United Mun. Distribs. Grp. v. FERC*,
    732 F.2d 202 (D.C. Cir. 1984)..............................................................10

*W. Minn. Mun. Power Agency v. FERC*,
    806 F.3d 588 (D.C. Cir. 2015)..............................................................6

*Wabash Valley Power Ass'n v. FERC*,
    268 F.3d 1105 (D.C. Cir. 2001)............................................................7

*Yee v. City of Escondido*,
    503 U.S. 519 (1992)............................................................................7

*Zivotofsky ex rel. Ari Z. v. Sec'y of State*,
    444 F.3d 614 (D.C. Cir. 2006)..............................................................3

STATUTES AND REGULATIONS

15 U.S.C. § 717b .........................................................1, 6, 14, 15, 16

15 U.S.C. § 717d ...............................................................................18

15 U.S.C. § 717f ..................................................................................6

18 C.F.R. § 154.103 ..........................................................................16

18 C.F.R. § 154.109 ..........................................................................16

**AGENCY DECISIONS**

*Dominion Cove Point LNG, LP,*
    115 FERC ¶ 61,337 (2006), *vacated in part sub nom.* 532 F.3d 928
    (D.C. Cir. 2008) ..................................................................................17

*Dominion Cove Point LNG, LP,*
    119 FERC ¶ 61,209 (2007) ................................................................17

*Dominion Cove Point LNG, LP,*
    129 FERC ¶ 61,073 (2009) ..................................................................9

*Dominion Cove Point LNG, LP,*
    134 FERC ¶ 61,219 (2011) ................................................................17

*E. Tenn. Natural Gas, LLC,*
    117 FERC ¶ 61,016 (2006) ................................................................17

*Natural Gas Pipeline Co. of Am.,*
    76 FERC ¶ 61,142 (1996) ..................................................................17

*Tenn. Gas Pipeline Co.,*
    97 FERC ¶ 61,225 (2001) .............................................................2, 16

# GLOSSARY

| | |
|---|---|
| BP Energy Company | BP |
| Dominion Cove Point LNG, LP | Dominion |
| Federal Energy Regulatory Commission | FERC or the Commission |
| Liquefied Natural Gas | LNG |
| Natural Gas Act, 15 U.S.C. § 717 *et. seq.* | NGA |
| Statoil Natural Gas LLC | Statoil |

## SUMMARY OF ARGUMENT

It is a fundamental principle of administrative law that a court will uphold an agency decision only on the reasoning the agency provides in that decision, not on post-hoc rationalizations by its counsel on appeal. The Federal Energy Regulatory Commission ("FERC" or "the Commission") asks the Court to ignore this principle. It makes little attempt to defend its original position that BP Energy Company ("BP") and Statoil Natural Gas LLC ("Statoil") are not similarly situated because they receive liquefied natural gas ("LNG") terminal services pursuant to different provisions of the Natural Gas Act ("NGA"). As explained in BP's opening brief, this decision is contrary to the plain text of 15 U.S.C. § 717b(e)(4), which was enacted specifically to prevent discrimination at "mixed" terminals between customers receiving similar terminal services under different provisions of the NGA.

Instead, FERC raises multiple new arguments, including that the early termination or "turnback" provision at issue is not a "term[] or condition[] of service" within the meaning of § 717b(e)(4), and that Dominion Cove Point LNG, LP ("Dominion") was justified in treating BP and Statoil differently because Statoil is a "foundation" shipper. FERC also

argues it reasonably found that Dominion's turnback offer to Statoil was not a "sweetheart deal," which it concedes would constitute prohibited undue discrimination.  But FERC made no such finding below, instead erroneously asserting that the issue is irrelevant.  FERC's heavy reliance on such post-hoc rationalizations confirms that its ruling below is deeply flawed and cannot be upheld.

In addition, even if this Court were to reach the merits of FERC's new arguments, they do not support its ruling.  Statoil's status as a "foundation shipper" is irrelevant to the turnback and cannot justify it.  And FERC's new argument that the phrase "terms or conditions of service" excludes turnback because it is limited to "operational" terms or conditions of service erroneously reads words into the statute.  It is also contrary to multiple FERC decisions holding that turnback is a term or condition of service that must be provided in a nondiscriminatory manner.  *See Tenn. Gas Pipeline Co.*, 97 FERC ¶ 61,225 (2001).

Finally, FERC's argument that BP lacks standing is meritless.  BP's statutory right to be treated in a nondiscriminatory manner was violated, depriving BP of the opportunity to relinquish any of its costly

2

underutilized capacity at the Cove Point Terminal.  This direct economic injury provides standing.

**ARGUMENT**

**I.    BP Has Standing To Challenge FERC's Order.**

BP has standing to challenge FERC's order.  The order injured BP by depriving it of an opportunity to turn back any of the underutilized services that cost BP about $25 million per year.  JA122.  This direct economic injury plainly provides standing.  *Scheduled Airlines Traffic Offices, Inc. v. Dep't of Def.*, 87 F.3d 1356, 1358 (D.C. Cir. 1996) ("economic loss" is a "cognizable harm[]"); *Ne. Energy Assocs. v. FERC*, 158 F.3d 150, 153-54 (D.C. Cir. 1998).

FERC argues that BP has not demonstrated that its payments are "a result of the Commission's actions."  Brief of Federal Energy Regulatory Commission ("Br.") 70.  But BP asked FERC to "require Dominion to offer a turnback of terminal capacity" to BP, to remedy the undue discrimination.  JA633 ¶ 48.  FERC denied this relief, thus causing BP's injury.  And FERC injured BP by violating its statutory right to nondiscriminatory treatment.  *See, e.g., Zivotofsky ex rel. Ari Z. v. Sec'y of State*, 444 F.3d 614, 619 (D.C. Cir. 2006) ("[A] concrete and particular injury for standing purposes can also

consist of the violation of an individual right conferred on a person by statute").

FERC argues that BP must also suffer some additional "competitive harm or other adverse impact as a result of Statoil's early contract termination."  Br. 70.  Even if such a showing were necessary, granting a valuable right to Statoil, BP's competitor, while failing to offer a corresponding right to BP, clearly does cause BP "competitive harm."  In any event, the cases FERC cites do not support its argument.  *PNGTS Shippers Group v. FERC*, 592 F.3d 132, 136-37 (D.C. Cir. 2010), did not hold that competitive harm was necessary; it held that a shipper's argument that a FERC ruling would increase its rates was overly speculative, because "FERC has not yet determined [the] rates."  *Id.* at 137.  Here, there is no such speculation: FERC has concluded that BP is not entitled to a turnback, and that decision is presently injuring BP.

*Anderson v. FERC*, 333 F. App'x 575 (D.C. Cir. 2009), held that a shipper lacked standing to challenge FERC's ruling on a different shipper's rates because the first shipper "expressly refrained from asking the Commission to lower its [own] rates in the underlying proceedings."  *Id.* at 577.  The Court specifically noted that "[i]f [a shipper] is indeed entitled to

4

pay a lower rate ... the Commission's failure to lower [the rate] would be a cognizable economic injury." *Id.* at 576-77. Here, BP asked FERC to require that BP be given a turnback right, and FERC's failure to provide that relief is "a cognizable economic injury." *Id.* BP plainly has standing.

## II. FERC Erred In Holding That Dominion Did Not Unduly Discriminate Against BP.

### A. FERC's Holding That BP And Statoil Are Not Similarly Situated Is Invalid.

#### 1. The NGA Prohibits Undue Discrimination Between Customers Receiving Similar Terminal Services Under Different Regulatory Regimes.

Below, FERC held that BP and Statoil are not similarly situated—and therefore need not be similarly treated—because BP is an "open access terminal" customer regulated under section 7 of the NGA, while Statoil is a "non-open access" customer regulated under section 3. JA632 ¶ 47; JA839 ¶ 13. FERC makes little attempt to defend that holding. Br. 78-79. As BP explained in its opening brief, FERC's interpretation is contrary to the plain text of the statute; even if there were statutory ambiguity, the interpretation is unreasonable given the statute's undisputed purpose. BP Br. 29-33; *see Chevron, USA, Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 842-43 (1984).

First, FERC's interpretation is contrary to "the unambiguously expressed intent of Congress." *W. Minn. Mun. Power Agency v. FERC*, 806 F.3d 588, 591 (D.C. Cir. 2015). The statute provides that "[a]n order issued for an LNG terminal that also offers service to customers on an open access basis shall not result in ... undue discrimination against existing customers." 15 U.S.C. § 717b(e)(4). As FERC itself agrees, the plain text of this provision "protects existing customers taking service under NGA section 7, 15 U.S.C. § 717f, against undue discrimination when a terminal offers service to new customers under NGA section 3, *id.* § 717b, by prohibiting undue discrimination in certain areas." Br. 9.

Yet FERC simultaneously contends that the difference in "regulatory regime" renders section 3 customers and section 7 customers not similarly situated. Br. 77. Indeed, FERC contends that it was not required to undertake any factual analysis of whether Statoil and BP are similarly situated "[i]n light of the very different regulatory regimes under which Statoil and BP Energy take service." Br. 79-80.[1]

---

[1] Intervenors Dominion and Statoil (collectively, "Dominion") argue that BP has not preserved its argument that FERC failed to analyze adequately whether BP and Statoil have similar protections. Initial Brief for Intervenors ("Dominion Br.") 38. Not so; BP argued in its rehearing

This interpretation renders § 717b(e)(4) a nullity.  If the difference in regulatory regime itself prevented customers from being similarly situated, then undue discrimination between section 3 and section 7 customers could not exist, and § 717b(e)(4)'s protection against such discrimination would be meaningless.  FERC's interpretation is therefore foreclosed by the "cardinal principle of statutory construction" that a court must "give effect, if possible, to every clause and word of a statute."  *Duncan v. Walker*, 533 U.S. 167, 174 (2001).

Furthermore, even if there were ambiguity, FERC's interpretation is unreasonable because it is contrary to the statute's undisputed purpose of preventing discrimination against existing section 7 customers at mixed LNG terminals.  *See Abbott Labs. v. Young*, 920 F.2d 984, 988 (D.C. Cir. 1990) ("The 'reasonableness' of an agency's construction depends on the

---

petition that FERC must analyze Statoil and BP's protections from market risks under their respective contracts and regulations to determine whether they were similarly situated.  JA822-23, 826-27.  While BP did not focus on the specifics of release and extension rights, FERC did not mention those specific rights until the rehearing decision itself.  *See Yee v. City of Escondido*, 503 U.S. 519, 534 (1992) ("parties are not limited to the precise arguments they made below"); *Wabash Valley Power Ass'n v. FERC*, 268 F.3d 1105, 1114 (D.C. Cir. 2001) (an argument need not be raised in a rehearing brief if it responds to subsequent reasoning).

construction's 'fit' with the statutory language as well as its conformity to statutory purposes").   FERC's decision must be reversed or remanded because the Agency's stated ground for finding that BP and Statoil are not similarly situated is wrong as a matter of law, and because the Agency failed to undertake an adequate analysis of whether BP and Statoil are similarly situated in fact.

> ### 2.    Statoil's Status As A "Foundation Shipper" Provides No Basis For Upholding FERC's Order.

FERC contends now that "Statoil may be treated differently as a result of its status as the sole expansion customer and 'foundation shipper' at Cove Point."   Br. 78.   The Court should not consider this argument, because it was not the basis of the agency's decision below.   "[A] reviewing court ... must judge the propriety of [agency] action solely by the grounds invoked by the agency" in its administrative decision, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), "not [on] its lawyers' post-hoc rationalizations," *Council for Urological Interests v. Burwell*, 790 F.3d 212, 222 (D.C. Cir. 2015). If the grounds invoked by the agency below "are inadequate or improper, the court is powerless to affirm the administrative action by substituting

what it considers to be a more adequate or proper basis." *Chenery*, 332 U.S. at 196.

Here, neither FERC's initial order nor its order denying rehearing relied upon Statoil's status as the "foundation" shipper that subsidized the 2006 expansion of the Cove Point terminal. Indeed, neither order even mentioned that Statoil is a foundation shipper. This argument therefore cannot provide a basis to affirm FERC's action. *Id.*

Even if the argument were properly presented, it would be invalid. FERC has previously rejected the broad argument that other shippers are "not similarly situated to Statoil because Statoil is a foundation shipper." *Dominion Cove Point LNG, LP*, 129 FERC ¶ 61,073, 61,343 (2009). Instead, FERC held that Statoil's status as a foundation shipper was relevant to specific provisions that "address unique circumstances concerning the foundation shippers," including creditworthiness requirements and rates. *Id.* at 61,343; *id.* at 61,344 (as to other terms, if a shipper "believes that it is improperly denied treatment as a similarly situated party, the party may request that the Commission make a determination").

Thus, any "unique circumstances" that Statoil faced as a foundation shipper were accounted for in the 2009 order. FERC does not attempt to

explain how Statoil's status as a foundation shipper is relevant to the turnback offer. *NRG Power Mktg., LLC v. FERC*, 718 F.3d 947, 958 (D.C. Cir. 2013) (whether parties are similarly situated must be analyzed with regard to the specific term or condition at issue).

## B. FERC Erred In Refusing To Analyze Whether Dominion's Turnback Offer To Statoil Was A Sweetheart Deal.

FERC also erred by refusing to analyze whether Dominion's turnback offer to Statoil is a prohibited "sweetheart deal." FERC does not dispute that providing a "sweetheart deal" to one customer to benefit an unregulated affiliate constitutes undue discrimination prohibited by the NGA. Br. 80-81; *see Town of Norwood v FERC*, 587 F.2d 1306, 1313 (D.C. Cir. 1978); *United Mun. Distribs. Grp. v. FERC*, 732 F.2d 202, 212-13 (D.C. Cir. 1984). Instead, FERC argues that it "reasonably rejected BP Energy's allegation that the Statoil early contract termination represented a 'sweetheart deal.'" Br. 80.

Again, FERC is impermissibly substituting a "post-hoc rationalization[]" in place of its actual reasoning in the challenged orders. *Council for Urological Interests*, 790 F.3d at 222. Below, FERC did *not* hold that the turn-back offer to Statoil was a valid "arm's length transaction," as

it argues to this Court.  Br. 81.  Instead, it refused to consider the issue, holding that "[a]s Statoil is Dominion's only current non-open access section 3 customer, *there is no reason for the Commission to consider whether Dominion's actions might have constituted discrimination against another such customer for inappropriate reasons*."  JA840 ¶ 16.  In other words, FERC refused to consider whether the Statoil turnback was a sweetheart deal because BP was regulated under a different regulatory regime, not based on any record evidence.

Furthermore, contrary to FERC's contention, BP clearly made "allegations which go to the fairness and good faith of the parties at the contract formation stage."  Br. 80, quoting *Norwood*, 587 F.2d at 1313.  As FERC recognized below, BP alleged "that Dominion provided Statoil with inappropriate preferential treatment in consideration for commercial benefits to Dominion's parent company."  JA840 ¶ 16.  FERC now argues that BP's evidence of improper dealings referred to an earlier 2011 turnback deal, but it made no such finding below.  Br. 80.  And, even if it referred to the 2011 turnback, the statement by the CEO of Dominion's parent company that Dominion offered Statoil a uniquely beneficial turnback because it planned "to work with [Statoil] ... in other ways" raised

an inference that the 2013 turnback deal was likewise motivated by the companies' other unregulated dealings.[2]

Because FERC erroneously refused to consider this factor—which it now concedes is relevant—the case must be remanded for the agency to investigate and make findings as to this issue.  *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

### C. The Commission's Post-Hoc Rationalization That Turnback Is Not A "Term Or Condition Of Service" Is Invalid.

#### 1. FERC's Contention That Turnback Is Not A "Term Or Condition Of Service" Is An Impermissible Post-Hoc Rationalization.

FERC also raises an entirely new statutory interpretation, contending that 15 U.S.C. § 717b(e)(4) does not apply because "a contract termination provision is [not] a 'term[] or condition[] of service at the facility.'"  Br. 73.  FERC claims that it "has defined 'terms or conditions of service at the facility' to mean operational terms or conditions of service in 'critical tariff

---

[2] FERC contends that it reasonably found the deal was an arms-length transaction because Dominion denied receiving "commercial value associated with any other infrastructure projects as consideration."  Br. 81.  But even if FERC had made this finding below (which it did not), it would be unreasonable to rely on Dominion's statement without conducting any investigation.  Further, even if no commercial value was directly received as consideration, the transaction would be a sweetheart deal if motivated by the desire to benefit affiliates.

areas, such as nominations, scheduling and operating conditions,'" but not termination provisions.  Br. 73, quoting JA839-40 ¶ 14.

Again, FERC's order cannot be upheld on this basis because it was not the basis for its ruling below.  *Council for Urological Interests*, 790 F.3d at 222.  The ruling below rested on the entirely distinct rationale that BP and Statoil are not similarly situated because they are governed by different regulatory regimes.  FERC's initial and rehearing orders do not define "terms or conditions of service" to mean "operational terms or conditions of service."  The very language FERC quotes from its rehearing order makes clear that "terms or conditions of service" encompasses "nominations, scheduling, *and* operating conditions," in addition to other "critical tariff areas."  JA839-40 ¶ 14 (emphasis added).

Further, FERC's orders below did not hold that "terms or conditions of service at the facility" excludes turnback provisions.  FERC's initial order held that Dominion had not discriminated against BP because "Dominion has not proposed to change the terms and conditions of service *for BP* in this proceeding"; Dominion's turnback agreement with Statoil only changed the terms and conditions *for Statoil*.  JA632 ¶ 46 (emphasis added).  As Dominion concedes, this rationale is invalid: it is "undue

13

discrimination" for a terminal to "leave a Section 7 customer's operational terms and conditions of service unchanged, but give the Section 3(e) customer better ones." Dominion Br. 34; *see* BP Br. 37.

FERC's order denying rehearing also did not hold that turnback is not a "term or condition of service." Instead, it rejected BP's argument that FERC's interpretation "would effectively render the antidiscriminatory provision of NGA section 3 meaningless," on the ground that FERC had required Dominion not to "discriminat[e] against the existing LTD customers as to their terms and conditions of service in the critical tariff areas, such as nominations, scheduling, and operating conditions." JA839-40 ¶ 14. The order provided no explanation as to why the statutory language does not similarly prohibit undue discrimination in turnbacks.

Because FERC's contention that turnback is not a "term[] or condition[] of service" under § 717b(e)(4) is a post-hoc rationalization of the agency's litigating counsel, it is entitled to no deference, and cannot be considered. *Council for Urological Interest*, 790 F.3d at 222-23; *Inv. Co. Inst. v. Camp*, 401 U.S. 617, 628 (1971) ("Congress has delegated to the administrative official and not to appellate counsel the responsibility for elaborating and enforcing statutory commands.").

## 2.  Turnback Is A "Term Or Condition Of Service."

Even if this Court were to consider the argument, FERC's contention that turnback is not a "term[] or condition[] of service at the facility" should be rejected.  It is not a reasonable construction of the statute, and it is an arbitrary and capricious "unexplained departure" from FERC's prior rulings.  *Comcast Corp. v. FCC*, 526 F.3d 763, 769 (D.C. Cir. 2008).

First, FERC's argument that "terms or conditions of service" means "operational terms or conditions of service" is not a reasonable construction of the statutory text.  Br. 73.[3]  Section 717b(e)(4) contains no limitation to "operational" terms or conditions of service.  It prohibits undue discrimination as to "terms or conditions of service" at LNG terminals generally.

The statutory structure confirms that "terms or conditions" is not limited to "operational terms or conditions": § 717b(e)(3)(B)(ii) refers to "rates, charges, terms, or conditions of service," while § 717b(e)(4) refers simply to "terms or conditions of service," showing that Congress intended

---

[3]  Dominion asserts that "BP agrees that Dominion has not discriminated against it in any operational aspect."  Dominion Br. 10.  That is incorrect. BP agrees that BP and Statoil "receive fundamentally the same services," JA838 ¶ 11, but this merely demonstrates that the two are similarly situated and the turnback offer to Statoil was discriminatory.

the phrase to cover *all* provisions relating to service apart from "rates" or "charges." 15 U.S.C. § 717b(e).  FERC's regulations similarly use the phrase "terms and conditions" to refer broadly to provisions relating to service, other than "rates." 18 C.F.R. § 154.103 (a tariff must contain "rates" and "terms and conditions"); *see id.* § 154.109 (similar); *cf. Jacksonville Bulk Terminals Inc. v. Int'l Longshoreman's Ass'n*, 457 U.S. 702, 710-12 (1982) (noting that phrase "terms or conditions" is "extremely broad").

Moreover, in multiple previous rulings, FERC has held that turnback is a term or condition of service, and must be provided in a nondiscriminatory manner.  For instance, *Tennessee Gas Pipeline Co.*, 97 FERC ¶ 61,225 (2001), explained "the Commission has held that negotiated terms and conditions of service include any provisions that result in a customer receiving a different quality of service than that provided other customers."  *Id.* at 62,029.  The ruling then explained that this includes turnback or "early termination" provisions, because such "provisions present too much potential for undue discrimination unless they are offered in the pipeline's tariff pursuant to generally applicable conditions." *Id.*

Similarly, *Natural Gas Pipeline Co. of America*, 76 FERC ¶ 61,142 (1996), held that a "difference in the terms of capacity turn-back is unduly discriminatory," and required the pipeline to hold an open season that "offer[ed] the same terms and conditions to its affiliated and non-affiliated shippers." *Id.* at 61,788; *see E. Tenn. Natural Gas, LLC*, 117 FERC ¶ 61,016, ¶ 9 (2006) (holding that a pipeline failed "to explain why the capacity turnback provision is not unduly discriminatory and does not constitute an impermissible negotiated term and condition of service"). Because FERC has utterly failed to explain its apparent change in position as to whether turnback is a "term or condition of service," its litigation position is arbitrary and capricious. *Comcast Corp.*, 526 F.3d at 769.[4]

---

[4] FERC's contention that its position is consistent with prior orders regarding Dominion Cove Point is erroneous. The 2006 order approving the expansion did not address turnback. 115 FERC ¶ 61,337 (2006) (JA1). The 2007 order allowed Dominion to negotiate turnbacks for pipeline service, but explicitly required them to be offered "on a not unduly discriminatory basis." 119 FERC ¶ 61,209, 62,232-33 (2007). The 2011 order did not consider whether a turnback was unduly discriminatory, but held that a similar "ramp-down" right allowing Statoil to reduce LNG quantities "is a valuable right to [Statoil] that must be" provided on "a not unduly discriminatory basis." 134 FERC ¶ 61,219, 62,189 (2011). While no shipper protested the *2011* turnback, Br. 75, FERC does not and cannot contend that this omission somehow waived the right to protest the *2013* turnback.

17

Dominion—but not FERC—argues that BP's interpretation should be rejected because it fails to give effect to different language in 15 U.S.C. § 717d(a) and § 717c(b), and creates surplusage.  Dominion Br. 30-31.  But neither provision applies specifically to "mixed" LNG terminals, which offer terminal services to some customers under section 3 and to others under section 7.  Thus, § 717b(e)(4) is necessary to foreclose precisely the interpretation FERC adopted below: that discrimination between such customers is permissible because the difference in regulatory regime renders them differently situated.   And § 717c(b) and § 717d(a) are differently worded because they prohibit discriminatory "rates" and "charges," which, as explained above, § 717b(e)(4) does not address.  Indeed, § 717d(a) applies *only* to discrimination in "rate[s]" and "charge[s]."

Dominion also argues that "under BP's interpretation, Section 3(e)(4) takes back at mixed terminals all of the regulatory freedom that Section 3(e)(3)(B)(ii)(II) bestowed."  Br 32.   That is not accurate.  Section 717b(e)(4) applies only to "mixed" LNG terminals; it has no application in the ordinary circumstance, where terminal customers receiving similar services are similarly regulated.   And even at mixed terminals, § 717b(e)(4)'s

protection is limited to terms and conditions of service, and does not require that the same rates or charges be offered to all customers.[5]

## III.   FERC Erred In Holding That Dominion's Tariff Is Adequate To Prevent Undue Discrimination.

Finally, FERC argues that Dominion's tariff is sufficient to prevent undue discrimination because "the Commission reasonably determined that the Statoil early contract termination does not support BP Energy's undue discrimination claim."  Br. 81.  As explained above and in BP's opening brief, FERC's rejection of BP's undue discrimination claim is invalid.  Therefore, FERC's holding that Dominion's tariff is adequate is arbitrary and capricious.  *United Distrib. Cos. v. FERC*, 88 F.3d 1105, 1175 (D.C. Cir. 1996).

---

[5] Dominion further contends that BP's interpretation of § 717b(e)(4) fails to give effect to the phrase "at the facility."  Dominion Br. 29-30.  This phrase simply indicates that § 717b(e)(4) is limited to discrimination in terms or conditions of service at the LNG terminal, rather than on the pipeline.  *See* BP Br. 9-12 (§ 717b(e) was intended to change regulation of LNG terminal services, but not pipeline services).  The unloading, storage and regasification rights at issue are clearly rights "at the facility."

## CONCLUSION

For the foregoing reasons and those in BP's opening brief, this Court should reverse FERC's decision that there was no undue discrimination against BP, vacate FERC's orders and remand this matter to FERC with instructions to order an appropriate remedy.  In the alternative, the Court should vacate FERC's orders and remand the matter to FERC to conduct a new analysis consistent with the Court's opinion.

February 26, 2016                              Respectfully submitted,

                                               /s/ Erika L. Maley
                                               _____

Betsy R. Carr                                  Virginia Seitz
BP Energy Company                              Erika L. Maley
201 Helios Way                                 John T. Hebden
Houston, TX 77079                              Sidley Austin LLP
713.323.6353                                   1501 K Street NW
Betsy.Carr@bp.com                              Washington, DC 20005
                                               202.736.8961
                                               emaley@sidley.com
                                               *Counsel for Petitioner BP Energy Company*

## CERTIFICATE OF COMPLIANCE

In accordance with Circuit Rule 32(a) and Rule 32(a)(7) of the Federal Rules of Appellate Procedure, the undersigned certifies that the accompanying brief has been prepared using 14-point Book Antiqua typeface, and is double-spaced (except for headings and footnotes).

The undersigned further certifies that the brief is proportionally spaced and contains 3,993 words exclusive of the certificate required by Circuit Rule 28(a)(1), table of contents, table of authorities, signature lines, and certificates of service and compliance.  The words of Final Reply Brief of Petitioner do not exceed 4,000 words, pursuant to this Court's Order of October 13, 2015.  The undersigned used Microsoft Word 2007 to compute the count.

/s/ Erika L. Maley
Erika L. Maley

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of February, 2016, I electronically filed the foregoing Final Reply Brief of Petitioner with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

/s/ Erika L. Maley
Erika L. Maley