

ORAL ARGUMENT HELD ON APRIL 19, 2016

May 10, 2016

*Via Electronic Case Filing*
Mark Langer, Clerk
U.S. Court of Appeals for the D.C. Circuit
E. Barrett Prettyman United States Courthouse
333 Constitution Avenue, NW, Room 5205
Washington, DC 20001

Re:   *EarthReports, Inc. v. FERC*, No. 15-1127,
      Letter of EarthReports, Inc., *et al.* ("Environmental Petitioners") Pursuant to Rule 28(j) of the Federal Rules of Appellate Procedure ("F.R.A.P")

Dear Mr. Langer:

Pursuant to F.R.A.P. 28(j), Environmental Petitioners submit a supplemental authority relevant to the above-captioned case. Environmental Petitioners submitted evidence that 350,000 dekatherms/day ("Dth/d") of gas would be produced by Cabot Oil & Gas Corp. and shipped to the Cove Point LNG export terminal via the Atlantic Sunrise pipeline (under Cabot's contract for 850,000 Dth/d of firm capacity). *See* Joint Br. 19-22, 37-38 & Add. A-80, A-135. FERC did not dispute the facts about Cabot's production or shipment but rather complained that the information appeared in a "handful of press releases and news articles." FERC Br. at 27. As Environmental Petitioners noted, confirmation of the media reports appeared in documents submitted to FERC for the Atlantic Sunrise Project. *See* Joint Br. at 21-22 n. 49; Reply Br. at 7 n. 6.

Environmental Petitioners also argued that impacts of the production and shipment induced by the Cove Point project should be analyzed in an environmental impact statement. *See* Joint Br. at 33-43. FERC contended that those impacts were not reasonably foreseeable. *See* FERC Br. at 42. But FERC estimated the number of wells needed for the Constitution pipeline, based on the Dth/d to be shipped, and that methodology could have provided the basis for a full analysis of the Cove Point project's upstream impacts. *See* Add. A-90; Reply Br. at 11.

On May 5, 2016, FERC issued its Draft Environmental Impact Statement ("DEIS") for the Atlantic Sunrise Project (http://elibrary.ferc.gov/idmws/common/OpenNat.asp?fileID=14240175; cited pages attached). The DEIS confirms Cabot's "Transportation Contract Quantity," acknowledges that "the number of wells needed to supply the Atlantic Sunrise Project can be estimated," and uses the Dth/d of gas to be shipped as the basis for an estimate. DEIS at 1-2, 4-263. Because the number of wells needed to supply Cove Point also could have been estimated, based on the 860,000 Dth/d of gas slated for shipment to the export terminal, *see* JA-622, and FERC knew the location of Cabot's wells, *see* JA-549, the Cove Point project's indirect impacts in Susquehanna County are reasonably foreseeable and should be analyzed in an EIS.

Respectfully submitted,

/s/ *Deborah Goldberg*

Deborah Goldberg
212-845-7377
dgoldberg@earthjustice.org

*On behalf of EarthReports,Inc.;*
*Sierra Club; and Chesapeake*
*Climate Action Network*


Attachment

cc: Counsel of Record (via ECF)




**Office of Energy Projects**

**May 2016**

**FERC/EIS-0269D**
**Docket No. CP15-138-000**

# *DRAFT ENVIRONMENTAL IMPACT STATEMENT*

## Volume I

# Atlantic Sunrise Project



**TRANSCONTINENTAL GAS PIPE LINE COMPANY, LLC**

Federal Energy Regulatory Commission
Division of Gas – Environment and Engineering
888 First Street, NE, Washington, DC 20426

**Cooperating Agency:**



**U.S. Army Corps of Engineers**

Transco seeks approval to begin construction as soon as possible after receiving all necessary federal authorizations, with an estimated in-service date in February or March 2018. The proposed facilities and project schedule are described in more detail in section 2.0.

We[3] prepared this draft environmental impact statement (EIS) to assess the environmental impacts associated with construction and operation of the facilities proposed by Transco in accordance with the requirements of the National Environmental Policy Act (NEPA) of 1969, as amended. The U.S. Army Corps of Engineers (USACE) is a cooperating agency assisting in the preparation of the EIS because it has jurisdiction by law or special expertise with respect to environmental impacts associated with Transco's proposal. The roles of FERC and the USACE in the review process are described in section 1.2.

## 1.1    PROJECT PURPOSE AND NEED

According to Transco, the purpose of the Project is to provide an incremental 1.7 million dekatherms per day (MMDth/d) of year-round firm transportation capacity from the Marcellus Shale production area in northern Pennsylvania to Transco's existing market areas, extending to the Station 85 Pooling Point in Choctaw County, Alabama. The Project would include modifications to the existing Transco mainline system to reverse the direction of flow, enabling new north-to-south capabilities (bi-directional flow) to transport this new source of natural gas to existing markets. While this EIS briefly describes Transco's stated purpose, it will not determine whether the need for the Project exists, because this will later be determined by the Commission.

Transco held an open season for the Project from August 8 to September 27, 2013. As a result, it has executed long-term, binding precedent agreements[4] with nine shippers for the entire proposed 1.7 MMDth/d or about 1.65 billion cubic feet per day (bcf/d) of additional firm transportation capacity the Project would provide. Table 1.1-1 lists Transco's shippers and contracted volumes. The non-jurisdictional facilities associated with the delivery of these volumes are addressed in sections 1.4 and 4.13.

| TABLE 1.1-1 | |
|---|---|
| **Customers and Transportation Capacity Subscribed to the Atlantic Sunrise Project** | |
| Shipper | Transportation Contract Quantity (dekatherms per day) |
| Anadarko Energy Services Company | 44,048 |
| Cabot Oil & Gas Corporation | 850,000 |
| Chief Oil & Gas LLC | 420,000 |
| Inflection Energy LLC | 26,429 |
| MMGS, Inc. | 22,024 |
| Seneca Resources Corporation | 189,405 |
| Southern Company Services | 60,000 |
| Southwestern Energy Services Company | 44,048 |
| WGL Midstream, Inc. | 44,048 |
| **Total Contracted Volume** | **1,700,002** |

---

[3] "We," "us," and "our" refer to the environmental staff of the FERC's Office of Energy Projects.

[4] A precedent agreement is a binding contract under which one or both parties has the ability to terminate the agreement if certain conditions, such as receipt of regulatory approvals, are not met.

Natural gas production from the Marcellus Shale involves the drilling and completion of wells and construction of gathering systems and consequent rights-of-way. We received comments concerning these "upstream" production activities; however, FERC's authority under the NGA review requirements relate only to natural gas facilities that are involved in interstate commerce. Thus, the facilities associated with the production of natural gas are not under FERC jurisdiction.

We received comments concerning the development of natural gas reserves in the Marcellus Shale. Development of the Marcellus Shale natural gas resource is not the subject of this EIS nor is the issue directly related to the Project. Production and gathering activities, and the pipelines and facilities used for these activities, are not regulated by FERC but are overseen by the affected region's state and local agencies with jurisdiction over the management and extraction of the Marcellus Shale gas resource. FERC's jurisdiction is further restricted to facilities used for the transportation of natural gas in interstate commerce, and does not typically extend to facilities used for intrastate transportation.

### 4.13.3   Natural Gas Production

#### 4.13.3.1   Wells

Marcellus Shale production wells involve improvement or construction of roads, preparation of a well pad, and drilling and completion of the well. Between July 2011 and February 3, 2015, 1,135 gas wells were permitted in Pennsylvania counties within 10 miles of the Project (PADEP, 2015). It is likely that permits for drilling will continue to be issued in the Marcellus Shale through the anticipated period of construction of the Project, but the extent of such drilling is unknown. Assuming all of the wells that have been permitted are drilled and permits are issued at the same rate of approximately 260 per year, it is conceivable that between 700 and 800 new wells could be drilled by the time the Atlantic Sunrise Project is scheduled to be completed.

Transco has shippers that have committed to the Atlantic Sunrise Project to deliver 1.7 MMDth/d. Due to the complexities of interstate natural gas transmission, gas may enter and exit Transco's system from multiple areas of the United States, making any specific identification or analysis of individual wells beyond the scope of this EIS. However, the number of wells needed to supply the Atlantic Sunrise Project can be estimated. A typical production well can provide between 0.3 to 8.7 million cubic feet of natural gas per day (MMcf/d) (304 to 8,830 Dth/d) (NYSDEC, 2011). The median 30-day initial production rate of Marcellus shale wells in mid-2013 was 5 MMcf/d (Unconventional Oil and Gas Report, 2014). At this median production rate, about 340 gas wells would be required to provide the 1.7 MMDth of gas required for the Atlantic Sunrise Project. Because well production declines over time, the actual number of wells necessary to supply the Atlantic Sunrise Project over many years would be much higher.

#### 4.13.3.2   Pipeline Gathering Systems

Multiple non-jurisdictional FERC intrastate natural gas well interconnect and gathering facilities are either proposed, under construction, or have been constructed within 10 miles of the Project. These non-jurisdictional pipeline systems gather natural gas from Marcellus Shale wells for transport to local customers or the interstate natural gas transmission system. These include over 80 facilities that Transco identified as having been constructed and placed into service since 2010. The vast majority of these are gathering pipelines, ranging from 56 feet to 3.6 miles in length. A small percentage of these projects involve aboveground facilities. These include: meter stations (three), dehydration facilities (two), and compressor stations (seven). The horsepower associated with the compressor stations ranges from 14,156 to 28,512 hp. All but eight of these gathering lines and aboveground facilities are in Susquehanna County, Pennsylvania. Most of the rest are located in Wyoming County, Pennsylvania.